# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Mitchell Brozik and MB Security, LLC,**
**Defendants Below, Petitioners**

**vs)  No. 16-0292** (Monongalia County 13-C-651)

**Betty Parmer, Plaintiff Below, Respondent,**
**and Kourt Security Partners, LLC,**
**Third-Party Defendant Below, Respondent**

**And**

**Betty Parmer, Plaintiff Below, Petitioner**

**vs) No. 16-0400** (Monongalia County 13-C-651)

**Mitchell Brozik and MB Security, LLC,**
**Defendants Below, Respondents, and Thomas Kupec**
**and Brandon Kupec, Defendants Below, Respondents,**
**and Gregory Morgan, Defendant Below, Respondent**

**And**

**Betty Parmer, Plaintiff Below, Petitioner**

**vs) No. 16-0238** (Monongalia County 14-C-374)

**United Bank, Inc., a West Virginia corporation, and**
**Randall Williams, Defendants Below, Respondents**

**FILED**

**January 6, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

These three consolidated appeals concern litigation sparked by a series of financial transactions involving Betty Parmer; Mitchell Brozik and his company, MB Security, LLC; Thomas Kupec, Brandon Kupec, and Gregory Morgan, three Clarksburg, West Virginia, attorneys; and United Bank and its loan officer, Randall Williams. The appeals in Docket Nos. 16-0292 and 16-0400 stem from a jury trial in the Circuit Court of Monongalia County, in which the jury returned a verdict in favor of Betty Parmer and against Mitchell Brozik and MB Security, LLC, in the amount of $1.5 million for breach of fiduciary duties, breach of contract, and fraud, and an additional $200,000 in punitive damages, for a total award of $1.7 million. The jury also heard Betty Parmer's claims of negligence, legal malpractice, breach of fiduciary

1

duties, and fraud against Respondents/Defendants below Thomas Kupec, Brandon Kupec, and Gregory Morgan, but found no liability on the part of these three parties.

Specifically, in Docket No. 16-0292, Petitioners/Defendants below, Mitchell Brozik ("Mr. Brozik") and MB Security, LLC ("MB Security"), by counsel William J. Leon, appeal the circuit court's "Trial Order," entered on December 21, 2015, and its "Order Denying Brozik and MB Security [sic] Post Trial Motions," entered on February 23, 2016. Respondent/Plaintiff below Betty Parmer ("Ms. Parmer"), by counsel S. Sean Murphy, filed a response. Additionally, Respondent/Third-Party Defendant below Kourt Security Partners, LLC ("Kourt Security"), by counsel Charles J. Kaiser, Jr. and Jeffrey D. Kaiser, filed a response. Mr. Brozik and MB Security filed a reply.

In Docket No. 16-0400, Ms. Parmer, by counsel S. Sean Murphy, appeals the circuit court's "Trial Order," entered on December 21, 2015, and its order denying her motion for amended judgment and/or for a new trial, entered on March 15, 2016, as it related to the jury's adverse verdict regarding her claims against the three attorney defendants. Mr. Brozik and MB Security, by counsel William J. Leon, filed a summary response. Thomas Kupec and Brandon Kupec, by counsel, David D. Johnson, III and Larry A. Winter, filed a response. Gregory Morgan, by counsel Peter T. DeMasters, Kyle T. Turnbull, and Mina R. Gantous, also filed a response.

Finally, the third consolidated case, Docket No. 16-0238, arises from the dismissal of a separate, but related, civil action filed by Ms. Parmer against United Bank, Inc. and Randall Williams (collectively, "United Bank"). In this appeal, Ms. Parmer, by counsel S. Sean Murphy, appeals the Circuit Court of Monongalia County's order granting United Bank's motion for summary judgment, entered on February 12, 2016, and its order denying Ms. Parmer's motion to reconsider the denial of her motion to amend her complaint, entered on February 18, 2016. United Bank, by counsel Shawn P. George, filed a response.

This Court has considered the parties' briefs and the record on appeal in each of the three above-styled cases. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision consolidating the appeals and affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

**Factual and Procedural Background**

I.
Docket Nos. 16-0292 and 16-0400:
Ms. Parmer's claims against Mr. Brozik, MB Security,
Thomas Kupec, Brandon Kupec, and Gregory Morgan

*A. Introduction*

These appeals stem from a series of financial transactions, the most important of which was a secured party sale of corporate assets that occurred on May 5, 2012. At the sale, Ms. Parmer foreclosed on assets owned by Secure US, a corporation owned by Mr. Brozik.[1] Ms. Parmer is Mr. Brozik's aunt, with whom he enjoyed a close relationship throughout his life. Ms. Parmer is a resident of Harrisburg, Pennsylvania, and was 76 years old at the time of the transaction. Ms. Parmer and her husband built, operated, and sold multiple businesses during their marriage. Following their divorce in 1991, Ms. Parmer received a business and other investments worth several million dollars. It is undisputed that Ms. Parmer routinely provided financial assistance to Mr. Brozik over the years leading up to the 2012 transaction giving rise to her claims.[2]

The transaction at the center of this case was the result of Mr. Brozik seeking financial assistance from his aunt because he was at risk of losing his business, Secure US. In short, Secure US had pledged all of its assets as collateral to secure a loan that Ms. Parmer purchased from a creditor of Secure US in April 2012. Following the secured party sale on May 5, 2012, Ms. Parmer became the owner of Secure US's assets. Thereafter, Ms. Parmer and Mr. Brozik entered into a management agreement that provided that a new company formed by Brozik, MB Security, would manage Secure US's assets that Ms. Parmer had purchased and would continue to operate the business as usual.

Ms. Parmer filed suit in September of 2013, naming Mr. Brozik and MB Security as defendants, and claiming breach of fiduciary duties, fraud, conspiracy, and conversion. Ms. Parmer also named as defendants three attorneys who were involved in the transaction, Thomas Kupec, Brandon Kupec, and Gregory Morgan. The Kupecs represented Mr. Brozik and Secure US; Gregory Morgan is unaffiliated with the Kupecs and presided over the secured party sale on May 5, 2012. Against the attorney defendants, Ms. Parmer raised the same claims that she raised against Mr. Brozik and MB Security, and added claims of negligence, legal malpractice, and breach of contract. In February of 2014, Ms. Parmer sought to terminate the management agreement with MB Security. By agreed order, the parties terminated the agreement and transferred operation of the business to Ms. Parmer. Additionally, Mr. Brozik and MB Security were unsuccessful in their attempts to have the circuit court dismiss Ms. Parmer's fraud claim on the basis that it lacked specificity.

Mr. Brozik and MB Security filed their answer and a counterclaim in August of 2014. In their counterclaim, they asserted breach of contract, tortious interference with business opportunities, and conversion of Mr. Brozik's personal property. In addition, Mr. Brozik and MB Security filed a third-party complaint against Kourt Security, the entity that had purchased the Secure US assets from Ms. Parmer during the pendency of this case below. Against Kourt

---

[1] Secure US provided residential and commercial fire and security services in North Central West Virginia.

[2] Mr. Brozik also received financial assistance in the past from Milan Puskar, who was Mr. Brozik's godfather. The Parmer, Brozik, and Puskar families came to the United States from the same region of Serbia and remained very close.

3

Security, Mr. Brozik and MB Security raised claims of tortious interference and conversion, and sought indemnification and contribution for any damages that may be awarded to Ms. Parmer.

Following discovery, the parties filed dispositive motions. Mr. Brozik and MB Security moved for summary judgment on Ms. Parmer's breach of fiduciary duty, fraud, and conspiracy claims, and also argued that Ms. Parmer suffered no damages. The circuit court denied Mr. Brozik's and MB Security's motion by order entered in November of 2015. Kourt Security was granted summary judgment with respect to Mr. Brozik's conversion of lost wages and profits and tortious interference claims. Mr. Brozik's claim that Kourt converted his personal property, his claims of quantum meruit for rent, and property damage claim survived summary judgment. Additionally, the circuit court dismissed Mr. Brozik's and MB Security's claim against Kourt Security for indemnification and contribution. The circuit court granted summary judgment in favor of the Kupecs and Mr. Morgan only with respect to Ms. Parmer's conspiracy claim. Finally, Ms. Parmer sought partial summary judgment in which she sought a declaration that she purchased Secure US's assets subject to a judgment lien held by Security Alarm Financing Services, Inc. ("SAFE"), which the circuit court denied.[3]

After addressing the parties' respective motions, the following claims were presented to the jury: (1) Ms. Parmer's claims of fraud, breach of contract, and breach of fiduciary duty against Mr. Brozik and MB Security; (2) Ms. Parmer's claims of fraud, breach of fiduciary duty, legal malpractice, and negligence against the Kupecs and Mr. Morgan; and (3) Mr. Brozik's and MB Security's claims of conversion of personal property, property damage, and quanum meruit for rent against Kourt Security. The case proceeded to a jury trial in December of 2015.[4]

*B. The Trial Evidence*

The evidence revealed that Mr. Brozik's financial difficulties, at least as they related to the present litigation, began around 2008. Secure US defaulted on a loan that it had obtained in 2007 from LaSalle Bank, which was later acquired by Bank of America. Bank of America sued

---

[3]In the early 2000s, Secure US filed a civil action against SAFE, another security company, in the United States District Court for the Southern District of West Virginia. Secure US and SAFE were in a dispute over the rights to a third company's customer accounts and recurring monthly income therefrom. SAFE asserted a counterclaim against Secure US. In November of 2010, the district court awarded judgment in favor of SAFE on Secure US's claim and awarded SAFE $1.132 million in its counterclaim against Secure US. SAFE later registered its judgment against Secure US in the Northern District and began efforts in a miscellaneous action to execute the judgment against Secure US's assets, including its customer accounts. The Kupecs took over representation of Secure US in the SAFE matter during the miscellaneous action. It appears that the SAFE matter was the driving force behind the present litigation.

[4] In 2015, Mr. Brozik initiated a separate civil action against Kourt Security Partners and Boyanna, LLC, which the circuit court consolidated with Civil Action 13-C-651. That suit was styled *Brozik Rentals, LLC, and Mitchell Brozik v. Kourt Security Partners, LLC, and Boyanna, LLC*, Circuit Court of Monongalia County Civil Action No. 15-C-3.

4

Secure US in the United States District Court of the Northern District of Illinois as a result of the default, and was granted summary judgment on the $3.5 million owed on the LaSalle Bank note. Secure US was ordered to turn over its assets that it had pledged as collateral on the note. To avoid Bank of America's collection efforts, in 2009, Mr. Brozik sought help from Milan Puskar, a family friend. Mr. Puskar agreed to purchase the loan in order to acquire all of the related debt and security instruments and to extend Mr. Brozik an additional $900,000 in credit, resulting in Mr. Brozik and Secure US owing Mr. Puskar approximately $4 million. Mr. Brozik and Secure US pledged their personal property as collateral to secure the line of credit. The Secure US debt and security instruments were held by the Puskar Family Trust. Because the indebtedness of Secure US and Mr. Brozik was prior in time to the SAFE Judgment lien,[5] the Puskar lien was superior in priority.

In July of 2011, SAFE initiated efforts in the United States District Court for the Northern District of West Virginia to execute on its $1.132 million judgment against Secure US. As noted above, the Kupecs represented Secure US in the SAFE matter. In March of 2012, a federal magistrate ordered that a judicial sale of Secure US's assets be held on May 16, 2012. In the midst of SAFE's collection efforts, in October of 2011, Mr. Puskar died unexpectedly. The Puskar Trust sought to divest itself of the Secure US debt and security instruments, and was willing to accept $2.5 million from Mr. Brozik for the note with a face value of over $4 million. Around early April of 2012, Mr. Brozik approached Ms. Parmer to ask her if she was willing to loan him the $2.5 million. Ms. Parmer agreed to do so, and borrowed the necessary money from Centra Bank (now United Bank) in Morgantown, West Virginia. Ms. Parmer personally arranged for the loan and negotiated the terms, without counsel, with bank representative Randall Williams. Ms. Parmer's goal was to assist her nephew in keeping his business operating.

However, rather than loaning Mr. Brozik the money, Ms. Parmer agreed to purchase the notes from the Puskar Trust herself, and then, according to Mr. Brozik and the attorney defendants, further agreed to foreclose on Secure US's assets prior to the SAFE judicial foreclosure scheduled for May of 2012. The alleged plan was for Mr. Brozik to then repay Ms. Parmer from the profits generated by continuing to operate the business. Mr. Brozik advised Brandon Kupec of his agreement with Ms. Parmer, and Brandon Kupec called Ms. Parmer and confirmed her understanding of the transactions.[6] Ms. Parmer traveled to Morgantown for the closing on her loan from United Bank, which took place on April 19, 2012. That same day, following the closing on the loan, Ms. Parmer met with representatives from the Puskar Trust and executed the necessary documents for her to acquire the LaSalle/Bank of America note, Puskar line of credit, and related security instruments. As a result, Ms. Parmer stepped into the shoes of the Puskar Trust and acquired the total indebtedness of about $4 million secured by a

---

[5] See footnote 3, *supra*.

[6] During their communications, Ms. Parmer indicated to Brandon Kupec that she had counsel in her home state of Pennsylvania, and Brandon Kupec advised her to consult with him. However, Ms. Parmer did not seek the advice of her counsel at any stage in these transactions. Additionally, it appears undisputed that Thomas Kupec never met or spoke with Ms. Parmer.

first lien on all of Secure US's assets, which was superior to SAFE's $1.132 million judgment lien against Secure US.

Ms. Parmer's next action was to give notice to Secure US that she was calling on it to cure its default under the note and line of credit. Mr. Brozik then responded to Ms. Parmer's demand and stated that Secure US was unable to cure the default. By letter dated April 20, 2012, Ms. Parmer requested that foreclosure proceedings commence. All of the foregoing letters were drafted by Brandon Kupec on behalf of Secure US. After discovering a conflict of interest with the initial attorney selected, the Kupecs requested that Gregory Morgan conduct the foreclosure sale. Mr. Morgan spoke with Ms. Parmer by telephone and explained that he would be conducting the foreclosure sale, and she confirmed that was her intention. According to Mr. Morgan, he and Ms. Parmer agreed that the goal of the sale was to make her the owner of the Secure US assets. Ms. Parmer authorized Mr. Morgan to issue a bid of up to $4 million on her behalf.

The secured party foreclosure sale took place on May 2, 2012. Of the seventeen attendees, there were only two bidders: Patrick Egan, owner of Kourt Security, and Mr. Morgan, on Ms. Parmer's behalf. Mr. Egan made a final bid of $3.6 million. Mr. Morgan then placed the winning bid for Ms. Parmer in the amount of $4 million. As a result, Ms. Parmer became the owner of Secure US's assets.

Around the time of the sale in May of 2012, Mr. Brozik organized MB Security for the purpose of operating the security business using the former Secure US assets. At Mr. Brozik's request, Brandon Kupec contacted Ms. Parmer to discuss her signing a management agreement with MB Security, which obligated MB Security to pay the $2.5 million note that Ms. Parmer obtained from United Bank and entitled MB Security to receive all profits and gains from the management of the new company. Ms. Parmer requested that Brandon Kupec make several modifications to the agreement, which he did. Ms. Parmer then signed the agreement in August of 2012.

SAFE believed that it was aggrieved by the May 5, 2012, secured party sale, and filed suit against Ms. Parmer, Mr. Brozik, and Secure US in the United States District Court for the Northern District of West Virginia on May 22, 2012. SAFE alleged that the sale was a fraudulent attempt to deny it the benefit of its $1.132 million judgment against Secure US. SAFE sought a declaration that its judgment lien survived the secured party sale and that Ms. Parmer be found personally liable for its judgment against Secure US. The District Court denied SAFE's motion for summary judgment that its judgment survived the sale and further ruled that Ms. Parmer could not be held personally liable under the theory of successor liability. However, despite these rulings, Ms. Parmer and SAFE entered into a settlement agreement wherein Ms. Parmer stipulated that (1) she was not a good faith purchaser of the Secure US assets; (2) she took the Secure US assets subject to SAFE's judgment lien; and (3) she was personally liable for SAFE's judgment lien.[7] The crux of Ms. Parmer's claims in the present lawsuit was that she was unaware

---

[7] Ms. Parmer's present counsel also represented her in the SAFE suit. Additionally, the Kupecs and Mr. Morgan state that Ms. Parmer subsequently sold the former Secure US assets to (continued . . . )

that she would become the owner of Secure US's assets; she alleged that she merely intended to help her nephew in his time of financial trouble.

### C. The Verdict

Following the December of 2015, jury trial, the jury returned the following verdict: (1) neither Thomas nor Brandon Kupec breached any fiduciary duties owed to Ms. Parmer; (2) Mr. Brozik and MB Security breached both a contract with and fiduciary duties owed to Ms. Parmer; (3) neither Thomas Kupec nor Mr. Morgan committed negligence or malpractice; (4) Brandon Kupec committed negligence and malpractice in his representation of Ms. Parmer, however, the jury found Brandon Kupec and Ms. Parmer each to be 50 percent at fault; (5) Mr. Brozik and MB Security made false representations, untrue statements, failed to provide Ms. Parmer necessary and important information, and fraudulently induced Ms. Parmer into a series of transactions that made her the owner of Secure US's assets; (6) neither Thomas Kupec nor Brandon Kupec committed fraud; (7) Mr. Brozik and MB Security acted in a willful, wanton, and reckless manner; and (8) neither Thomas Kupec nor Brandon Kupec acted in a willful, wanton, and reckless manner. The jury found no liability on any of Mr. Brozik's conversion claims, real property claims, or quantum meruit/rent claims against Kourt Security.

With respect to damages, the jury awarded a judgment in favor of Ms. Parmer in the amount of $750,000 against Mr. Brozik and MB Security for breach of contract and breach of fiduciary duty; $750,000 against Mr. Brozik and MB Security for fraud; and $200,000 against Mr. Brozik and MB Security in punitive damages. The circuit court memorialized the jury's verdict in a "Trial Order" entered on December 21, 2015.

### D. The Post-Trial Motions

Mr. Brozik and MB Security filed a post-trial motion in which they requested that the circuit court set aside the verdict and grant a new trial. The circuit court denied Mr. Brozik's and MB Security's motion by order entered on February 23, 2016. Ms. Parmer also filed a motion seeking a new trial with respect to her claims against the Kupecs and Mr. Morgan. The circuit court denied Ms. Parmer's post-trial motion by order entered on March 15, 2016. Mr. Brozik/MB Security and Ms. Parmer each appealed to this Court.

II.
Docket No. 16-0238:
Ms. Parmer's claims against United Bank and Randall Williams

In April of 2014, while her suit against Mr. Brozik, MB Security, the Kupecs, and Gregory Morgan was pending, Ms. Parmer filed a separate action against United Bank and its loan officer, Randall Williams, concerning their role in the transaction. She alleged claims of negligence, breach of fiduciary duty, and conspiracy. Specifically, Ms. Parmer alleged that when

---

Kourt Security, owned by Patrick Egan, for $3.2 million, and $1.132 million of those proceeds went to pay SAFE to discharge the liability she voluntarily agreed to accept. In the present litigation, Parmer sought to recover, among other sums, the $1.132 million she paid to SAFE.

she closed on the $2.5 million loan from United Bank in April of 2012, she was unaware of the SAFE judgment or that her nephew was the subject of an Internal Revenue Service investigation. Rather, she alleged that she believed she was merely signing a note for her nephew to help him with his debt to the Puskar Trust. Ms. Parmer further alleged that United Bank was involved in every step of the alleged scheme that formed the basis of her claims against Mr. Brozik, MB Security, the Kupecs, and Greg Morgan. Additionally, she alleged that, without her knowledge, United Bank loaned an additional $827,000 to MB Security pursuant to the management agreement and took as collateral the former Secure US assets she owned. However, Ms. Parmer admitted that she signed the management agreement; that she contacted United Bank to originate the loan; and that Mr. Williams did not advise her one way or the other about whether to borrow the money.

On December 16, 2015,[8] eighteen days before discovery closed in her suit against United Bank, Ms. Parmer moved to extend discovery, which United Bank opposed. Nevertheless, United Bank made their expert available and Ms. Parmer took the deposition. Additionally, United Bank's representative and Mr. Williams agreed to be deposed, but Ms. Parmer declined.

United Bank filed a motion for summary judgment on January 6, 2016. Rather than file a response, Ms. Parmer filed two motions: a motion to disqualify the presiding circuit court judge[9] and a motion to reconsider the previous denial of her motion to amend her complaint to allege fraud. The Chief Justice denied the disqualification motion by Administrative Order on January 22, 2016. Ms. Parmer then timely filed a response to United Bank's summary judgment motion.

By order entered on February 12, 2016, the circuit court granted United Bank's motion for summary judgment. In sum, the circuit court ruled that (1) Ms. Parmer's negligence claim failed for a lack of valid legal duty; (2) Ms. Parmer had no breach of fiduciary duty claim because she did not allege a breach of contract and United Bank owes no fiduciary duty to a borrower absent special circumstances not present in this case; and (3) Ms. Parmer's civil conspiracy claim failed because she did not present any evidence of wrongdoing by United Bank. By order entered on February 18, 2016, the circuit court denied Ms. Parmer's motion to reconsider the denial of her motion to amend her complaint. Ms. Parmer appeals both orders to this Court.

**Discussion**

I.
Docket No. 16-0292

---

[8] The jury returned its verdict in Ms. Parmer's suit against Mr. Brozik, MB Security, the Kupecs, and Gregory Morgan on December 4, 2015.

[9] The Honorable Christopher C. Wilkes presided over the case in the Business Court Division of the Circuit Court of Monongalia County.

We first address the assignments of error raised on appeal by Mr. Brozik and MB Security in Docket No. 16-0292, which are as follows: (1) that the circuit court erred in denying their Rule 50(a) motions for judgment as a matter of law and seeking dismiss[al] [of] Ms. Parmer's fraud claim; (2) that the circuit court erred in denying their Rule 50(b) post-trial motion for judgment as a matter of law; (3) that the circuit court erred in ruling that Mr. Brozik breached a fiduciary duty; (4) that the circuit court erred in denying their Rule 50 motions asserting that Ms. Palmer suffered no damages; (5) that the circuit court erred in denying their motion to disqualify Judge Wilkes; and (6) that the circuit court failed to conduct a post-trial analysis of the jury's punitive damages award as required by *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996).

Rule 50(a) of the West Virginia Rules of Civil Procedure, which governs a circuit court's entry of judgment as a matter of law, provides as follows:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Moreover, this Court has held that

> [i]n ruling . . . on a motion for a judgment notwithstanding the verdict, . . . the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant.

Syl. Pt. 1, in part, Mildred *L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994). We expanded upon this standard by holding in syllabus point three of *Alkire* that

> [t]he granting of a motion for judgment notwithstanding the verdict is reviewed *de novo,* which triggers the same stringent decisional standards that are used by the circuit courts. While a review of this motion is plenary, it is also circumscribed because we must review the evidence in a light most favorable to the nonmoving party.

Moreover,

9

[w]e review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Kizer v. Harper*, 211 W. Va. 47, 51, 561 S.E.2d 368, 372 (2001).

With respect to claims of fraud, this Court has held that the plaintiff is required to show the following by clear and convincing evidence:

"'(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.' Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981)." Syllabus Point 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988).

Syl. Pt. 2, in part, *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 188 W. Va. 468, 425 S.E.2d 144 (1992).

Rule 50(b) of the West Virginia Rules of Civil Procedure, which governs the renewal of a motion for judgment after trial and the alternative motion for a new trial, provides as follows:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew the request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) If a verdict was returned:
(A) allow the judgment to stand,
(B) order a new trial, or
(C) direct entry of judgment as a matter of law; or
(2) if no verdict was returned:
(A) order a new trial, or
(B) direct entry of judgment as a matter of law.

With respect to a motion for judgment as a matter of law pursuant to Rule 50(b), we have held as follows:

1.      The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo.*

10

2.      When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

3.      "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983).

Syl. Pts. 1, 2, and 3, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

Mr. Brozik and MB Security argue that, in her complaint, Ms. Parmer made nonspecific allegations that Mr. Brozik and Brandon Kupec caused her to purchase Secure US's assets without advising her of the existence of a judgment and "duped" her into signing a management agreement with MB Security. While Mr. Brozik's post-trial motion does not reference Rule 50 or Rule 59, Mr. Brozik and MB Security argue that Ms. Parmer's own testimony showed that she and Mr. Brozik were close; that she had helped him before; that she knew exactly what she was doing; that she personally arranged for the loan from United Bank that she used to buy the notes from the Puskar Trust; and that she knew that the notes were to be foreclosed upon. Moreover, in their fourth assignment of error, Mr. Brozik and MB Security argue that the jury's compensatory damages award in the amount of $1.5 million in favor of Ms. Parmer was not supported by the evidence. Mr. Brozik and MB Security argue that, as result of her settlement with SAFE and subsequent agreement to sell the Secure US assets to Kourt Security, Ms. Parmer lost only $300,000.

Upon our review of the record in this matter, we find that there was sufficient evidence of fraud introduced at trial to sustain the jury's verdict and damages award. Ms. Parmer testified that she agreed to help Mr. Brozik by obtaining the loan to help him save his business. She further testified that she did not want to own any more businesses, and she told Mr. Brozik as much. In her testimony, she denied knowing that she would foreclose on the note and become the owner of the assets. She further testified that when she asked Mr. Brozik questions about the transaction, Mr. Brozik told her that Brandon Kupec would take care of everything.

Additionally, Ms. Parmer testified that she did not know that SAFE had a judgment or that she may get sued as a result thereof. She testified that had she known of the SAFE judgment, she would have ceased the transaction and not signed the papers at the bank. In fact, the owner of SAFE testified that SAFE sued Ms. Parmer because he believed Ms. Parmer was in "cahoots"

11

with her nephew to avoid paying the judgment. Ms. Parmer's testimony convinced the jury that, but for Brozik's concealment, Ms. Parmer never would have been a part of this series of transactions. On appeal, Mr. Brozik and MB Security ask this Court to usurp the role of the jury, disregard this evidence, and decide the case differently. We decline to do so. *See* Syl. Pt. 3, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975) ("It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony is conflicting."). Therefore, we reject Mr. Brozik's and MB Security's first two assignments of error.

In their third assignment of error, Mr. Brozik and MB Security argue that the circuit court erred in finding that Mr. Brozik breached a fiduciary duty to Ms. Parmer. "The fiduciary duty is '[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]' *Black's Law Dictionary* 625 (6th ed.1990)." *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W. Va. 430, 435, 504 S.E.2d 893, 898 (1998). The circuit court made this ruling in granting Ms. Parmer partial summary judgment. According to Mr. Brozik and MB Security, the circuit court found that, because Mr. Brozik and Ms. Parmer signed an agreed order terminating the management agreement, that Mr. Brozik and MB Security consented to the award of summary judgment and to the finding that that they breached the management agreement and breached their fiduciary duty. However, Mr. Brozik argues that the agreed order makes no reference to him admitting that a fiduciary duty existed or that he breached it, but after being directed by the court that a breach of duty and contract existed, the jury awarded Ms. Parmer $750,000.

We disagree that the circuit court erred with respect to its ruling on Ms. Parmer's breach of contract and breach fiduciary duty claims. The May 6, 2014, "Agreed Order Granting [Ms. Parmer] Partial Summary Judgment and Injunctive Relief," signed by Mr. Brozik's and MB Security's then-counsel, states, in part, as follows:

> 4.      Since MB Security, LLC has been managing the assets of Ms. Parmer, the following has occurred:
>
>    a.      Ms. Parmer has been named as a defendant in a law suit over the manner in which she became the owner of the former assets of Secure US;
>
>    b.      Mitch Brozik has been charged with violation of the Internal Revenue Code by the United States Attorney's office and has agreed to plead guilty to the same;
>
>    c.      MB Security, LLC has failed to pay on a $2.5 million note owed to United Bank as previously agreed to by the parties; [and]
>
>    d.      MB Security, LLC has failed to pay the West Virginia State taxes and tax liens have been recorded.

The evidence revealed that Mr. Brozik caused his aunt to become the owner of his company's assets as part of a scheme to avoid paying a lawful judgment obtained by a competing

12

security company, SAFE. He formed another company, MB Security, in order to use the former Secure US assets and to continue doing business as usual, without any regard for the duty owed to his aunt who assisted him. Based on the agreed findings in the order, we cannot find that the circuit court erred in ruling that Mr. Brozik breached a fiduciary duty to Ms. Parmer.

Mr. Brozik's and MB Security's fifth assignment of error is that the circuit court judge should have disqualified himself. By motion filed on the eve of the jury trial, Mr. Brozik and MB Security sought the disqualification of the Honorable Judge Russell Clawges. The motion was prompted by an exchange between Mr. Brozik's trial counsel, Edward Kuhout, and the court in which the judge, outside of the presence of the jury, made statements to the effect that everyone in the courtroom could see that the defendants were acting to the disadvantage "of this poor lady," referring to Ms. Parmer.

Upon our review, we find no error in Judge Clawges' denial of the motion to disqualify. The United States Supreme Court has held that for alleged bias to rise to the level of requiring recusal, the bias must stem from an extrajudicial source. *U.S. v. Grinnell Corp.,* 384 U.S. 563, 583 (1966). The Supreme Court has stated that, "[i]f the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Liteky v. U.S.,* 510 U.S. 540, 551 (1994). In the present case, the circuit court denied that it was biased; rather, the circuit court ruled that its statements were based upon "its unvarnished perception of the facts" derived from his presiding over the case for nearly two years. Accordingly, we find no error.

In their final assignment of error, Mr. Brozik and MB Security argue that the circuit court failed to conduct a post-trial analysis of the jury's punitive damages award as required by *Alkire*. In syllabus point five of *Alkire*, we held as follows:

> Under our punitive damage jurisprudence, it is imperative that the amount of the punitive damage award be reviewed in the first instance by the trial court by applying the model specified in Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991), and Syllabus Point 15 of *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), aff'd, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Thereafter, and upon petition, this Court will review the amount of the punitive damage award, applying the standard specified in Syllabus Point 5 of *Garnes*.

Mr. Brozik and MB Security argue that, in the present case, Ms. Parmer failed to request a post-trial review of the punitive damages award.[10] Upon our review, we note that in the January 14, 2016, hearing on Mr. Brozik's and MB Security's post-trial motions, the circuit court determined that, based on case law, punitive damages can be recovered in a case where the jury finds fraud. The circuit court then found that, based on the evidence and the finding of fraud, the

---

[10] The record also fails to reflect that Mr. Brozik and MB Security requested such a review.

jury's award of punitive damages would stand. We also note that, pursuant to *Garnes*, we decline to disturb a punitive damages award of $200,000, when accompanied by a compensatory damages award in the amount of $1.5 million. Therefore, having addressed and rejected each of the arguments raised on appeal by Mr. Brozik and MB Security in Docket No. 16-0292, we affirm the Circuit Court of Monongalia County's December 21, 2015, "Trial Order" inasmuch as it relates to the jury's verdict against Mr. Brozik and MB Security, and its February 23, 2016, order denying Mr. Brozik's and MB Security's post-trial motions.

## II.
## Docket No. 16-0400

We turn now to Docket No. 16-0400, wherein Ms. Parmer appeals the circuit court's December 21, 2015, "Trial Order," and its March 16, 2016, order denying her amended judgment and/or a new trial,[11] inasmuch as the jury rejected her claims against the Kupecs and Gregory Morgan. In her appeal, Ms. Parmer raises the following assignments of error: (1) the circuit court should have directed a verdict for Ms. Parmer as to her claims of professional negligence/malpractice against each of the lawyer defendants; (2) the circuit court gave inconsistent and conflicting jury instructions that misstated the law; (3) the circuit court gave instructions that were not warranted by the facts or the applicable law and failed to properly instruct the jury as to the burden of proof applicable to affirmative defenses; (4) the circuit court should have given Ms. Parmer's proffered instructions regarding the Uniform Commercial Code; (5) the verdict is inconsistent with the facts presented to the jury; (6) the circuit court should have permitted Ms. Parmer to question Mr. Brozik regarding his federal tax evasion conviction and enter evidence regarding the same; (7) the circuit court should not have permitted the attorney defendants' expert Steven Thomas to offer opinions regarding the Uniform Commercial Code; and (8) the circuit court should have granted Ms. Parmer's motion for partial summary judgment and thereafter granted her motion for a directed verdict regarding the issue of whether SAFE's judgment lien survived the secured party sale. We address each assignment of error below.

First, Ms. Parmer argues that the circuit court should have directed a verdict[12] in her favor with respect to her claims versus the Kupecs and Gregory Morgan. Ms. Parmer essentially argues that she was entitled to a directed verdict because she called an expert witness, Robert Davis, Esq., to testify that these three defendants breached duties owed to her, and further that the attorney defendants failed to call an expert to rebut those opinions. She filed three post-trial

---

[11] The order is titled "Order Denying Plaintiff's Renewed Motion Pursuant to Rule 50 of the West Virginia Rules of Civil Procedure and Motion For Amended Judgment and/or for New Trial Pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, and, Order Denying Plaintiff's Supplemental Motion for Directed Verdict Pursuant to Rule 50 of the West Virginia Rules of Civil Procedure and/or Motion for Amended Judgment/New Trial Pursuant to Rule 59 of the West Virginia Rules of Civil Procedure."

[12] Ms. Parmer refers to her motion for a directed verdict; however, pursuant to Rule 50, the proper motion is for a judgment as a matter of law.

14

motions, in which she argued for a judgment as a matter of law pursuant to Rule 50(b); to alter or amend judgment pursuant to Rule 59(e); and for a new trial pursuant to Rule 59(a)(1), respectively.

> As noted above in our discussion of Mr. Brozik's and MB Security's Rule 50(b) motion,

> it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

Syl. Pt. 2, in part, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). Additionally, "issues not raised in an initial Rule 50(a) motion may not be asserted in a subsequent post-verdict motion for judgment as a matter of law under Rule 50(b)." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 50(b), at 1114 (4th ed. 2014) (citations omitted).

In the present case, despite calling her motion a "renewed" motion for judgment as a matter of law, the circuit court correctly determined, based on its review of the transcript, that Ms. Parmer failed to make a Rule 50(a) motion before the case went to the jury, and thus, she was not entitled to pursue a Rule 50(b) motion. Accordingly, we find no error in the denial of Ms. Parmer's Rule 50(b) motion.

With respect to our review of a motion to alter or amend a judgment pursuant to Rule 59(e), we have held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.,* 204 W. Va. 430, 513 S.E.2d 657 (1998). Furthermore,

> [a] motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

Syl. Pt. 2, *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 717 S.E.2d 235 (2011).

In the present case, Ms. Parmer identified no intervening change in controlling law, new evidence, clear error of law, or obvious injustice as a result of the verdict. Therefore, her Rule 59(e) motion was properly denied by the circuit court.

Finally, with respect to a motion for a new trial under Rule 59(a), we have held as follows:

> "A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure,* the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syllabus Point 3, *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom., W.R. Grace & Co. v. West Virginia,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

Syl. Pt. 2, *Sayre v. Roop*, 205 W. Va. 193, 517 S.E.2d 290 (1999). Additionally,

> "'[t]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc.,* 223 W.Va. 209, 672 S.E.2d 345 (2008).

Syl. Pt. 2, *Peters v. Rivers Edge Min., Inc.,* 224 W. Va. 160, 680 S.E.2d 791 (2009).

As we noted above, Ms. Parmer's argument is based upon the notion that the circuit court was obligated to grant her post-trial motions because she presented the testimony of an expert to support her claims against the attorney defendants, and the attorney defendants failed to present expert testimony in rebuttal. However, contrary to Ms. Parmer's argument, there is no law that bounds a circuit court to grant her motion in these circumstances. In fact, we have long held as follows with respect to expert testimony:

> "The testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony." Syl. pt. 2, *Webb v. Chesapeake & Ohio Railway Company*, 105 W.Va. 555, 144 S.E. 100 (1928).

Syl. Pt. 2, *Papenhaus v. Combs*, 170 W. Va. 211, 292 S.E.2d 621 (1982).

Consistent with this long-standing precedent, the circuit court instructed the jury that "[y]ou may give expert testimony whatever weight you think it deserves, or you may give it no

16

weight." The jury heard all of the evidence and simply did not adopt the opinions of Ms. Parmer's expert witness that the attorney defendants breached their duties to her. Clearly, the evidence at trial was conflicting with respect to Ms. Parmer's claims against the attorney defendants, despite the fact that the attorney defendants did not rely on expert testimony in their defense. As we noted above in our discussion of Mr. Brozik's and MB Security's appeal, "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting." Syl. Pt. 3, *Long, supra.* Therefore, we find no error in the circuit court's denial of Ms. Parmer's motion for judgment notwithstanding the verdict, motion to alter or amend judgment, or her motion for a new trial.

Next, we address Ms. Parmer's second and third assignments of error together. Ms. Parmer's second assignment of error is that the circuit court gave inconsistent and conflicting jury instructions that misstated the law with regard to comparative fault. Ms. Parmer points to a part of the instruction that stated, on the one hand, that she would not be barred from recovery unless her negligence "equals or exceeds fifty percent of the total negligence," and then stated, on the other hand, that any recovery would be reduced if the jury attributed fault to her that "does not exceed fifty percent." Her third assignment of error is that there was insufficient evidence to warrant the circuit court giving the comparative instruction at all. We have held that

> "[t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties." Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

Syl. Pt. 1, *Walters v. Fruth Pharmacy, Inc.,* 196 W.Va. 364, 472 S.E.2d 810 (1996).

Upon our review, we reject Ms. Parmer's arguments.[13] Ms. Parmer singles out only a portion of the instruction to advance her point. When one examines the entire charge, it is clear that the jury was properly instructed -- multiple times -- that Ms. Parmer was not barred from recovery unless her percentage of negligence equaled or exceeded fifty percent of the total negligence that caused the harm she alleged. This Court has held as follows:

> "A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in

---

[13] Mr. Morgan correctly points out that Ms. Parmer failed to specifically object to the wording of the comparative fault instruction as being inconsistent or incorrect. Therefore, she has waived her right to assign error to the instruction on appeal. *See Shaw v. Perfetti,* 147 W.Va. 87, 125 S.E.2d 778 (1962). Nevertheless, we will examine the merits of her argument.

formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syllabus point 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *Reynolds v. City Hosp., Inc.,* 207 W. Va. 101, 529 S.E.2d 341 (2000). When reviewed as a whole, the circuit court's comparative fault instruction was a correct statement of the law; from the verdict form, we see no evidence that the jury was confused. As for Ms. Parmer's argument that the circuit court should not have even given the instruction, her own trial testimony negates her argument. She admitted that she chose to enter into the transactions on her own, despite Brandon Kupec's suggestion that she consult her own attorney. Thus, we reject Ms. Parmer's second and third assignments of error.

Ms. Parmer next argues in her fourth assignment of error that the circuit court improperly refused her instruction regarding the Uniform Commercial Code ("UCC"). Specifically, the circuit court instructed the jury that "[e]very aspect of a disposition of collateral must be commercially reasonable. . . . The term commercially reasonable is a legal term of art throughout the UCC. It is up to you, the jury, to determine if this sale was conducted in a commercially reasonably manner." Ms. Parmer states that the UCC defines "commercially reasonable" as "the usual manner in any recognized market." However, she argues that the court refused to give her proposed instruction on this definition, as well as her instruction that a secured party sale conducted with the intent to harm present or future creditors is fraudulent. She contends that the undisputed evidence was that the sale was conducted to extinguish SAFE's lien and allow business to go on as usual for Mr. Brozik.

The attorney defendants objected to Ms. Parmer's proffered definition of commercially reasonable because "recognized market" applies to markets with standardized price quotations for products that are fungible, such as stock exchanges. Mr. Morgan correctly argues that there was no standardized price for the Secure US customer accounts. Rather, the testimony demonstrated that the price would depend on who was buying them and for what purpose. Therefore, Ms. Parmer's requested instruction on the definition of commercially reasonable was contrary to the facts of the case, and was properly rejected by the circuit court. Moreover, Ms. Parmer did not plead that the lawyer defendants violated Uniform Fraudulent Transfers Act ("UFTA"), codified, in part, in West Virginia Code § 40-1A-4. Likewise, SAFE did assert a UFTA claim against Ms. Parmer in its suit. Therefore, there was no basis for the circuit court to instruct the jury on the intent behind the sale. "A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence." Syl. Pt. 2, in part, *Reynolds, supra.*

Next, Ms. Parmer argues that the jury's verdict is internally inconsistent with the evidence. Ms. Parmer contends that the jury's determination that Mr. Brozik defrauded her is tantamount to a finding that she was not fully aware of the details surrounding the series of transactions conducted on her behalf, and that such a finding necessarily precludes the finding that the attorney defendants satisfied their professional obligations to her or that she was comparatively negligent.

We disagree. This Court has held that

18

"[w]hen jury verdicts answering several questions have no logical internal consistency and do not comport with instructions, they will be reversed and the cause remanded for a new trial." Syl. Pt. 1, *Reynolds v. Pardee & Curtin Lumber Co.,* 172 W.Va. 804, 310 S.E.2d 870 (1983). In determining whether jury verdicts are inconsistent, the Court has observed that with respect to inconsistent verdict, "such inconsistency must appear after excluding every reasonable conclusion that would authorize the verdict." *Prager v. City of Wheeling,* 91 W.Va. 597, 599, 114 S.E. 155, 156 (1922).

*Modular Bldg. Consultants of West Virginia, Inc. v. Poerio, Inc.,* 235 W. Va. 474, 479, 774 S.E.2d 555, 560 (2015). Ms. Parmer's argument ignores that there were various parties involved in the series of transactions, all of whom had different roles and obligations. Stated simply, there is nothing inconsistent about the jury finding that Mr. Brozik defrauded his aunt and breached duties owed to her, but that Mr. Morgan and Thomas Kupec did not. As for Brandon Kupec, the jury found that he was negligent, but that Ms. Parmer's own negligence negated her recovery. Moreover, the fact that the jury found Brandon Kupec negligent undermines Ms. Parmer's argument that the verdict is internally inconsistent. Accordingly, we find no error.

In her sixth assignment of error, Ms. Parmer argues that the circuit court erred by allowing Steven Thomas to testify as an expert on behalf of the attorney defendants regarding the UCC. Ms. Parmer's argument is based upon the circuit court's pre-trial ruling that prohibited attorney experts from testifying as to the substantive law, but that they would be permitted to testify to their opinions as to the application of the law to the facts of the case. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 1, *Watson v. Inco Alloys Int'l, Inc.*, 209 W. Va. 234, 545 S.E.2d 294 (2001) (citations omitted).

Upon our review, we find that Mr. Thomas testified consistent with the court's ruling. Mr. Thomas testified about his experience with conducting foreclosure sales, and that the foreclosure sale in the present case was conducted properly. As Mr. Morgan correctly argues, it was Ms. Parmer's counsel who cross-examined Mr. Thomas by asking Mr. Thomas about various sections of the West Virginia Code, which necessitated Mr. Morgan's counsel to have Mr. Thomas clarify his testimony. Additionally, it is worth noting that the circuit court afforded Ms. Parmer's attorney expert, Robert Davis, considerable latitude when he testified about the application of the Rules of Professional Conduct in light of Ms. Parmer's claims against the attorney defendants. Accordingly, we reject Ms. Parmer's sixth assignment of error.

Ms. Parmer's seventh assignment of error is that the circuit court erred by failing to rule in her favor, as a matter of law, that the SAFE judgment lien on the Secure US assets survived the secured party sale. Ms. Parmer asserts that it was undisputed that Mr. Morgan planned to terminate the secured party sale if an individual bid in excess of $4 million, which was his maximum bidding authority for Ms. Parmer. Ms. Parmer insinuated below, and continues to do so on appeal, that the sale was fraudulent because the outcome was predetermined – that she would become the owner of the Secure US assets regardless of the other bidders, or the sale would be cancelled. Ms. Parmer concludes by arguing that the transferee in fraudulent sale takes

the property subject to the lien. *See* W.Va. Code §§ 46-9-617(b) and 46-9-617(c)(3). We review the circuit court's summary judgment rulings de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Upon our review, we reject Ms. Parmer's argument because it is based on a false premise. A closer review of Mr. Morgan's testimony reveals that he did not intend to terminate the sale if someone outbid Ms. Parmer; rather, his testimony was that he would suspend the sale for only long enough to determine whether he should increase the bid on her behalf. Accordingly, we find no error in the failure of the circuit court to grant partial summary judgment in favor of Ms. Parmer on the issue of whether the SAFE judgment lien survived the secured party sale.

Ms. Parmer's final assignment of error centers on the circuit court's alleged failure to properly address the conduct of Mr. Brozik and his counsel, Edward Kuhout.[14] Ms. Parmer contends that the court failed to adequately resolve discovery disputes or to sanction Mr. Brozik or his counsel for their conduct. However, from our review of the record, we fail to identify any specific failure by the circuit court that deprived Ms. Parmer of due process. Ms. Parmer also argues that the circuit court permitted the matter to be unnecessarily complicated by allowing Mr. Brozik and MB Security to file a counterclaim and third-party complaint, and by consolidating with this case a separate suit filed by Mr. Brozik and MB Security. As the circuit court correctly noted, Ms. Parmer objected to all efforts below by the attorney defendants to bifurcate the various claims, and thus, cannot be heard to now complain about the alleged complexity of the litigation now on appeal. Accordingly, having addressed and rejected each of Ms. Parmer's assignments of error in Docket No. 16-0400, we affirm the circuit court's denial of her post-trial motions.

III.

Docket No. 16-0238

We turn now to Ms. Parmer's appeal of the circuit court's order granting United Bank's motion for summary judgment and its order denying her motion to reconsider the denial of her motion to amend her complaint. In this appeal, Ms. Parmer argues that (1) she should have been permitted to amend her complaint, pursuant to Rule 15(a) of the West Virginia Rules of Civil Procedure, because United Bank had yet to file a responsive pleading; and (2) genuine issues of material fact existed, which should have precluded the granting of summary judgment.[15] Upon our review, we find that neither of Ms. Parmer's assignments of error have any merit.

---

[14] Mr. Brozik and MB Security went through several attorneys in the proceeding below. The first was Andrew Fusco, who withdrew. They were then represented by Trent Redman and Michael Payne, who also withdrew. Ultimately, Mr. Brozik and MB Security were represented by Edward Kuhout at trial. They are now represented by William J. Leon on appeal. For reasons unrelated to the present case, this Court annulled Mr. Kuhout's law license by opinion issued on November 15, 2016.

[15] Ms. Parmer raises a third assignment of error – that the circuit court erred in denying her motion to amend the scheduling order. However, she fails to provide any argument in support thereof. Accordingly, we decline to address the issue. *See* W.Va. R. App. Proc. 10(c)(7) (continued . . . )

Ms. Parmer's first contention is that the circuit court erred in denying her motion to reconsider the denial of her motion to amend her complaint. A bit of additional procedural background is necessary. Ms. Parmer filed the present suit on April 21, 2014. She indicates that the parties stipulated that United Bank would have until June 23, 2014, to "answer, move, or otherwise respond." On June 23, 2014, United Bank filed a motion to dismiss, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, in which it argued that Ms. Parmer's claims were barred by the two-year statute of limitations.[16] On February 27, 2015, Ms. Parmer moved to amend her complaint to allege, among other things, a "continuing tort" of fraud. The circuit court denied United Bank's motion to dismiss on March 18, 2015. On April 2, 2015, the circuit court denied Ms. Parmer's motion to amend her complaint. On April 3, 2015, United Bank filed its answer.

Rule 15(a) of the West Virginia Rules of Civil Procedure states, in part, that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Ms. Parmer argues that United Bank's Rule 12(b)(6) motion was not included as part of a responsive pleading; rather, it was filed as a separate motion. Therefore, Ms. Parmer contends that she had the right to amend her complaint because no responsive pleading had been filed when she requested the amendment.

After a careful review of the circumstances surrounding Ms. Parmer's motion below, we find no error in the circuit court's denial of her motion to amend her complaint or in the denial of reconsideration thereof. This Court has held as follows:

> A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.

Syl. Pt. 6, *Perdue v. S. J. Groves & Sons Co.,* 152 W. Va. 222, 161 S.E.2d 250 (1968).

In the present case, the parties agreed to extend the time for United Bank to "answer, move, or otherwise respond" to the complaint. United Bank then timely filed a motion to dismiss, which was fully briefed by the parties, including the filing of proposed findings of fact and conclusions of law. Then, after the case had been pending for almost a year, Ms. Palmer sought to amend her complaint to allege a "continuing tort." It appears clear to this Court that the basis for Ms. Parmer's proposed amendment was simply to avoid the possibility of her suit being dismissed as barred by the statute of limitations. However, once the circuit court denied United Bank's motion, the amendment became unnecessary because, as the court correctly determined,

---

(permitting this Court to "disregard errors that are not adequately supported by specific references to the record on appeal.")

[16] United Bank's motion was based on the fact that the closing for Ms. Parmer's loan occurred on April 19, 2012, but that she did not file the instant suit until April 21, 2014.

21

"all factual allegations raised in the proposed amended complaint were capable of being addressed in discovery."[17] The circuit court was correct to rule that Ms. Parmer "had failed to show any compelling reason to amend the Complaint and had failed to offer any valid reason for delay in seeking the amendment." As for Ms. Parmer's motion for reconsideration of that ruling, the circuit court properly determined that "granting the motion at this late date would be futile, unduly prejudicial to [United Bank], a waste of judicial resources, and would not serve the interests of justice." Accordingly, we find no abuse of discretion by the circuit court in its February 18, 2016, "Order Denying Plaintiff's Motion to Reconsider Court's Denial of Plaintiff's Motion to Amend Complaint."

Petitioner next argues that the circuit court erred in granting United Bank's motion for summary judgment.[18] To summarize, Ms. Parmer argues that the verdict in her suit against Mr. Brozik, MB Security, and the attorney defendants should have no bearing on the present suit against United Bank, i.e., her claims are not barred by collateral estoppel; that there were "special circumstances" that existed between Ms. Parmer and United Bank that should have created a duty on United Bank's behalf to protect Ms. Parmer from harm in the underlying loan transaction; that there were issues of fact regarding Ms. Parmer's conspiracy claim; that United Bank had conflicts of interest; that there were issues of fact as to whether United fraudulently induced Ms. Parmer into the loan transaction by making false representations about Mr. Brozik's payment history; and that under the management agreement between Ms. Parmer and Mr. Brozik, United continued to loan over $800,000 to Mr. Brozik using the former Secure US assets as collateral, while subordinating Ms. Parmer's security interests in those assets to United Bank's interests.

With respect to our review of the grant of summary judgment, this Court has held as follows:

1. A circuit court's entry of summary judgment is reviewed *de novo.*

2. "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

---

[17] According to the order, Ms. Parmer's counsel conceded that he focused his efforts on pursuing the other defendants involved in the same transaction.

[18] The circuit court's order granting summary judgment preceded its order denying reconsideration of the denial of Ms. Parmer's motion to amend her complaint by six days. However, the circuit court noted in the latter order that it considered the reconsideration motion prior to granting summary judgment, and found that the reconsideration motion "could not remedy the fatal defects presented in [Ms. Parmer's] case," which entitled United Bank to summary judgment.

3. The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial.

4. Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pts. 1, 2, 3 and 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Upon our review, we find that United Bank was entitled to summary judgment. We address Ms. Parmer's contentions in the context of her three claims: negligence, breach of fiduciary duty, and conspiracy.

First, without determining whether United Bank is entitled to invoke the doctrine of collateral estoppel, we nonetheless find that her negligence claims fail as a matter of law because she has failed to establish that United Bank owed any duty to her. Under West Virginia law, a bank has no implied duty of good faith and fair dealing absent a breach of contract claim. *See Evans v. United Bank, Inc.,* 235 W.Va. 619, 775 S.E.2d 500 (2015). Ms. Parmer did not allege a breach of contract; therefore, her negligence claim must fail for lack of a duty. *See* Syl. Pt. 1, *Parsley v. Gen. Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981) ("In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken.").

As to Ms. Parmer's breach of fiduciary duty claim, the circuit court concluded below that Ms. Parmer seeks to cast United Bank and Mr. Williams as her advisors, similar to an attorney who provides counsel to a client. However, she cites to no binding West Virginia authority for the existence of such a duty. In this case, United Bank acted as nothing more than a lender to Ms. Parmer, who admitted that she sought to help her nephew and "let her heart rule her head." Additionally, there are no "special circumstances" in this case that would create such a duty. Ms. Parmer admitted that she asked Mr. Williams about assisting Mr. Brozik, but that Mr. Williams did not advise her one way or the other. She further admitted knowing that Mr. Brozik owed money to the Puskar Trust, which is why she agreed to help him. From the record, it appears clear to this Court that the issues that Ms. Parmer encountered subsequent to obtaining the $2.5 million loan were not attributable to United Bank. Accordingly, Ms. Parmer's breach of fiduciary duty claim fails as a matter of law.

Finally, Ms. Parmer alleged that United Bank conspired with Mr. Brozik and Brandon Kupec to cause her the harm for which she sought recovery. We have held as follows regarding a civil conspiracy:

A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

23

A civil conspiracy is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).

Syl. Pts. 8 and 9, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

In the present case, despite almost two years of discovery, Ms. Parmer failed to produce any evidence that United Bank or Mr. Williams acted unlawfully. From the record, it is clear that Ms. Parmer contacted the bank to obtain a loan to help Mr. Brozik, and that Mr. Williams assisted her in doing so. There is no evidence that, to United Bank, this transaction was anything other than a routine loan. As for United Bank's subsequent loans to MB Security, these loans were made pursuant to the management agreement that Ms. Parmer admits she negotiated and signed with Mr. Brozik and Brandon Kupec. Ms. Parmer failed to present evidence of any conspiracy in this regard; therefore, her conspiracy claim fails as a matter of law.

## Conclusion

For the foregoing reasons, we affirm the Circuit Court of Monongalia County's "Trial Order," entered on December 21, 2015; its "Order Denying Brozik and MB Security [sic] Post Trial Motions," entered on February 23, 2016; its order denying Ms. Parmer's motion for amended judgment and/or for a new trial, entered on March 15, 2016; its order granting United Bank's motion for summary judgment, entered on February 12, 2016; and its order denying Ms. Parmer's motion to reconsider the denial of her motion to amend her complaint, entered on February 18, 2016.

Affirmed.

**ISSUED:** January 6, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis