368 S.E.2d 710

Betty **MUZELAK**

v.

**KING CHEVROLET, INC.**

No. 17346.

Supreme Court of Appeals of
West Virginia.

March 31, 1988.

Rita G. Kerstetter, Recht & Johnson, Wheeling, for King Chevrolet, Inc.

R. William Kasserman, Jr., Wheeling, for Betty Muzelak.

NEELY, Justice:

Appellant, King Chevrolet, Inc., provided a 1982 Chevrolet Cavalier to one of its salesmen, Charles Stein. During the eight months that Mr. Stein drove this automobile as a demonstrator, it was serviced ten times for repairs or adjustments. There were repairs to the carburetor, choke, speedometer, door moldings, seat belt buzzer alarm, spark plugs, as well as a complete paint job. The starting problems associated with the carburetor and spark plug repairs were corrected, but an engine vibration problem was never solved. Of approximately thirty-six demonstrators that Mr. Stein had driven over the years as a car salesman, this car was the worst in terms of reliability. He complained to the service department about the car and asked Bill Lewis, King Chevrolet's used car manager, if he could have another demonstrator because this car was so unreliable.

In December 1982, the appellee, Mrs. Betty Muzelak, contacted Bill Lewis about acquiring an automobile. Mr. Lewis had sold her previous car to her. He called Mrs. Muzelak back and told her that the "right car for her" was the 1982 Chevrolet Cavalier demonstrator that Mr. Stein had used. Although Mr. Lewis told Mrs. Muzelak that the car was a demonstrator, he did

342

not mention any of the previous repair problems with the car. In fact, Mr. Stein later testified that Mr. Lewis told him that it took someone with Mr. Lewis' sales ability "to get rid of" that car. Mrs. Muzelak test drove the car and bought the car with an extended new car warranty.[1]

Within ten days of purchasing the car, Mrs. Muzelak brought the car to King Chevrolet for repairs. Over the next eight months, her car was in King Chevrolet's service department about thirteen times. Most of the repairs were covered by the warranty but were usually not satisfactorily completed on the first occasion for the particular problem. A constant engine vibration and transmission fuel leak were never corrected. The car was so unreliable that Mrs. Muzelak did not drive the car after the first eight months of use. She later testified that she would not have bought the car if she had known its service history.

Mrs. Muzelak filed suit on 16 February 1984 against King Chevrolet, Inc.; General Motors Corporation as manufacturer; and Mr. Clark individually and as general manager of King Chevrolet. Her theories of recovery were, *inter alia,* breach of express warranty, breach of implied warranty of merchantibility under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(10) (1975), and negligence. In August 1985, Mrs. Muzelak filed an amended complaint[2] which asserted a cause of action for common law material misrepresentation under W. Va. Code, 46–2–721 [1963][3] against King Chevrolet for failing to disclose the numerous mechanical problems before she purchased the car. At trial in September 1985, the jury returned a verdict for Mrs. Muzelak and answered special interrogatories finding that: (1) General Motors had breached the express warranty; (2) King Chevrolet, Inc. and General Motors had breached the implied warranty of merchantibility; (3) King Chevrolet was negligent in its repairs of the car; and (4) King Chevrolet had concealed the service history of the car. The jury first awarded Mrs. Muzelak $15,000 in compensatory damages. The trial court then gave the jury supplemental interrogatories and a punitive damages instruction for material misrepresentation. The jury returned with a $25,000 award for punitive damages.

In a judgment order entered on 6 December 1985, after hearing motions for a new trial by King Chevrolet, Inc. and General Motors,[4] the circuit court: (1) reduced the amount of Mrs. Muzelak's compensatory damages from $15,000 to $10,748.48; (2) awarded Mrs. Muzelak $565.20 of her requested $1,485.58 for money expended on repairs not covered by warranty; (3) awarded Mrs. Muzelak attorneys' fees of $5,627.70 which was payment for exactly half of the time spent on the case; and (4) affirmed the jury verdict that King Chevrolet, Inc. would be liable for $25,000 in punitive damages to Betty Muzelak.

1. Mrs. Muzelak traded her 1980 Chevrolet Chevette as part of the purchase. Plaintiff purchased the vehicle for $8,915 and obtained GMAC financing for $7,770.52 of the purchase price at 10.9%. Her monthly payments were $200.45.

2. The Amended Complaint reads in pertinent part:

King Chevrolet, Inc. sold Plaintiff the said 1982 Chevrolet Cavalier, making material misrepresentations regarding its condition in that King Chevrolet, Inc. did not advise Betty Muzelak that the 1982 Chevrolet Cavalier automobile had been in their shop for repairs at least ten (10) times prior to the sale to Betty Muzelak.

3. W. Va. Code, 46–2–721 [1963] reads, in pertinent part:

"Remedies for material misrepresentation or fraud include all remedies available under this article for non-fraudulent breach. Neither rescission or a claim for rescission of the contract or sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." The official comment to this Code section indicates that the purpose of the section was to correct a situation whereby remedies for fraud had been circumscribed and to make clear that damages or other remedies were available for fraud or material misrepresentation.

4. General Motors Corporation assumed liability for breach of express warranty, breach of implied warranty and negligence. It fully comprised and satisfied amounts due Mrs. Muzelak and was dismissed from this civil action by order dated 15 May 1986.

On appeal to this Court, King Chevrolet asserts that the circuit court committed "plain error" when he gave a punitive damages instruction to the jury because punitive damages may not be recovered in a claim for material misrepresentation under the West Virginia Consumer Credit and Protection Act, *W.Va.Code,* 46A–6–101 [1974] *et seq.* Mrs. Muzelak asserts a cross-assignment of error because the court's reduction of compensatory damages caused Mrs. Muzelak to suffer a remittitur of the jury verdict. Furthermore, Mrs. Muzelak asserts that her attorneys' fees should be paid in full by the appellant.

## I

No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection.

Rule 51, W.Va.R.C.P. King Chevrolet asserts, based on Rule 51, that the trial court committed reversible error by instructing the jury on punitive damages for misrepresentation or concealment under *W.Va. Code,* 46A–6–102(f)(13) [1974]. We disagree and affirm.

There was no timely objection on the record by King Chevrolet to the trial court's compensatory or punitive damages instructions. Pursuant to the guidelines of *Ilosky v. Michelin Tire,* 172 W.Va. 435, 307 S.E.2d 603 (1983) the circuit court decided to bifurcate the compensatory damages issue of the trial from the punitive damages issue of the trial. The court first gave the jury its own edited compensatory damages instruction based on material misrepresentation.[5] No objections were made. In fact, King Chevrolet also submitted an instruction regarding material misrepresentation.[6] After the jury returned its answer finding by clear and convincing proof that King Chevrolet materially misrepresented facts concerning the 1982 Chevrolet Cavalier to Mrs. Muzelak and awarding her $15,000 in compensatory damages, the court then proceeded to instruct the jury on the punitive damages issue.[7] Before giving the instruc-

**5.** The edited instruction reads as follows:

*MISREPRESENTATION OR CONCEALMENT OF MATERIAL FACTS.* Betty Muzelak has sued King Chevrolet for making material misrepresentations regarding the 1982 Chevrolet Cavalier sold.

The court instructs the jury that the act, use or employment by any person of material misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any goods or services, is unlawful. *W.Va.Code,* 46A–6–102(f)(13); 46A–6–104; 46A–6–107; 46A–6–108.

If you, the jury, find that King Chevrolet, Inc. has employed any material misrepresentation, or the concealment, oppression or omission of any material fact with intent that Betty Muzelak rely on such concealment, suppression or omission in connection with the sale of the 1982 Chevrolet Cavalier and that thereby Betty Muzelak suffered any ascertainable loss of money or personal property, Betty Muzelak is entitled to recover her actual damages. *W.Va.Code,* 46A–6–102(f)(13); 46A–6–106(1).

**6.** King Chevrolet's jury instruction regarding misrepresentation reads as follows:

"The Court instructs the jury that the plaintiff, Betty Muzelak, must prove with clear and convincing evidence to the jury that she was (1) influenced to purchase the 1982 Cavalier by some misrepresentation of material fact, or the concealing, suppressing or omitting of a material fact, and (2) that defendant King Chevrolet intended that she rely on such concealment, suppression or omission when she purchased the vehicle. *W.Va.Code,* 46A–6–102 [1974]."

**7.** *SPECIAL INTERROGATORY NO. 6* Do you find by clear and convincing proof from the evidence, being a standard of proof higher than a preponderance of evidence, that King Chevrolet, Inc. sold Betty Muzelak the 1982 Chevrolet Cavalier, misrepresenting or concealing, suppressing or omitting of any material fact with intent that she rely upon such concealment, suppression or omission in the connection with the sale of the car?

(The jury answered in the affirmative)
*SUPPLEMENTAL INTERROGATORY NO. 1* If you have answered "yes" to Interrogatory No. 6 relating to the alleged concealment, suppression or omission of a material fact, do you find by clear and convincing proof from the evidence that the defendant, King Chevrolet, Inc. acted wilfully, wantonly and maliciously as to the

tion, the Court gave a copy to each party's counsel.[8] No objection was made or exception noted by either counsel.

■ "Where an objection is made to an instruction for the first time on appeal and such instruction is not so deficient so as to require invocation of the "plain error" rule, in consonance with Rule 51, W.Va.R.C.P., this Court will not consider the late objection." Syl. Pt. 1, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974). *See also Chambers v. Smith*, 157 W.Va. 77, 198 S.E.2d 806 (1973); *Yeager v. Stevenson*, 155 W.Va. 16, 180 S.E.2d 214 (1971); *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963). Because King Chevrolet did not object in a timely fashion to the trial court's punitive damage instruction, this court will consider their objection on appeal *only* if there is "plain error" in the trial court's punitive damages instruction.

### A

Mrs. Muzelak's claim of statutory misrepresentation and unfair or deceptive acts is based specifically on *W.Va.Code*, 46A–6–102(f)(13) [1974], the W.Va. Credit and Consumer Protection Act.[9] *W.Va.Code*, 46A–6–106 [1974] provides the remedies under the Consumer Protection Act and says in pertinent part:

(1) Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article, may bring an action in the Circuit Court of the county in which the seller or lessor resides or has his principal place of business or is doing business or as provided for in sections one and two [§ 56–1–1 and 56–1–2], Article One Chapter fifty-six of this Code *to recover actual damages or $200, whichever is greater. The court may, in its discretion provide such equitable relief as it deems necessary or proper.* [Emphasis Added]

Appellant argues that Mrs. Muzelak is limited to actual damages under this act, and therefore, the trial court committed "plain error" in giving the jury the punitive damages instruction.

■ However, we need not decide today whether Mrs. Muzelak may recover punitive damages under *W.Va.Code*, 46A–6–102(f)(13) [1974] because Mrs. Muzelak also pleaded and proved a cause of action for common law misrepresentation or fraud. "The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981); *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

concealment, suppression or omission of a material fact?
(The jury answered in the affirmative)
*SUPPLEMENTAL INTERROGATORY NO. 2* If you have answered "yes" to the Interrogatory No. 1, state the amount which you find, from the evidence that should be awarded as punitive damages against King Chevrolet for acting willfully, wantonly and maliciously in the concealment, suppression or omission of a material fact?
(The jury awarded $25,000)

8. The discussion on the record regarding the punitive damages instruction was the following:
The Court: In looking over the instruction I propose, is that good enough for both the defendant and the plaintiff?
Mr. Kasserman: We have no objection, your honor.
The Court: The proposed instruction, is it okay?
Mr. Kamlowski: No objection, your honor.

9. *W.Va.Code*, 46A–6–102(f)(13) [1974] asserts:
The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.

■ Mr. Lewis called Betty Muzelak on the phone and advised that he had a good car for her. Mr. Lewis intended to sell her a demonstrator with a poor service history and later bragged about the sale to fellow salesmen. King Chevrolet sanctioned this behavior by allowing the demonstrator to be resold despite its poor service history and complaints by Charles Stein. Betty Muzelak relied on Bill Lewis' representation as she had been satisfied with the purchase of her previous automobile from him. Betty Muzelak was damaged by Mr. Lewis' omission to discuss the car's service history and, because the car was so unreliable, she quit driving it as soon as she could save up enough money to buy another vehicle. Clearly, all elements of common law material misrepresentation were proved with sufficient evidence to authorize a jury verdict for Mrs. Muzelak.

■ "In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages." Syl. Pt. 9, *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986); Syl. Pt. 1, *Wells v. Smith*, 171 W.Va. 97, 297 S.E.2d 872 (1982).

■ Because the jury verdict found by clear and convincing proof that King Chevrolet was guilty of materially misrepresenting the service history of the Cavalier, the trial court was correct in giving the jury an instruction on punitive damages based on common law misrepresentation.[10] The court was cautious in awarding damages and bifurcated the damages issue so the jury would not be confused. Therefore, the circuit court did not misuse *W.Va.Code*, 46A–1–101 *et seq* [1974]. Rather the court used the common law fraud charge pleaded in Mrs. Muzelak's amended complaint as the basis for his punitive damages instruction. Accordingly, we find no plain error concerning the punitive damages instruction.

10. The trial court stated on the record, "What I'm focusing in on is at common law it seems to

### B

■ Finally, King Chevrolet asserts that the punitive damages award in the amount of $25,000 was grossly excessive and should be reduced. However, we see no evidence to support a reduction in damages. Punitive damages should not be reduced unless they seem monstrous. *Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977). Compensatory damages were assessed at $15,000 and the punitive damages were less than two times the amount of compensatory damages. The evidence also showed that King Chevrolet was worth well over one million dollars in December 1984 and, therefore, the punitive damages are less than 2.5 percent of King Chevrolet's net worth. The object of punitive damages is to deter further conduct by a particular defendant and others similarly situated. We see no evidence of an excessive verdict and, therefore, the $25,000 punitive damages award will not be disturbed by this Court.

### II

■ Mrs. Muzelak cross assigns as error the trial court's reduction of her compensatory damages from $15,000 to $10,-784.48. The plaintiff asserts that the UCC authorizes consequential and incidental damages and that the jury was instructed about annoyance and inconvenience damages. Therefore, plaintiff wants the $15,-000 reinstated.

In *Jarrett v. E.L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977) we set forth a standard to measure annoyance and convenience damages:

"We find that annoyance and inconvenience are properly considered as elements in the measure of damages plaintiffs are entitled to recover, provided that these considerations are measured by an objective standard of ordinary persons acting reasonably under the given conditions."

go with it, if they find a misrepresentation or fraud they can consider punitive damages."

160 W.Va. at 404, 235 S.E.2d at 365. Following this guideline, the circuit court held that Mrs. Muzelak should not be able to interject subjective damages of pain and suffering into a warranty or negligence theory without any claim for bodily injury. Therefore, the circuit court allowed Mrs. Muzelak to recover actual damages for the warranty cause of action as follows:

| | |
|---|---|
| Payment on car | $ 2,019.50 |
| Cash/Down payment | $ 39.68 |
| Net trade in on 1980 Chevette | $ 1,809.38 |
| Payoff to GMAC | $ 6,915.93 |
| | $10,784.49 |

We see no reason for the reduction of the jury verdict for compensatory damages. The trial court gave the jury an instruction regarding annoyance and inconvenience during the compensatory damages stage of the trial.[11] Mrs. Muzelak presented evidence that she lost 25 hours of her vacation time in taking the Cavalier in for repairs. She testified that she was afraid to drive the car because it was so unreliable and often found an alternative method of transportation.[12]

In West Virginia, "courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous and manifestly show jury passion, impartiality, prejudice or corruption." Syl. Pt. 6, *Roberts v. Stevens Clinic Hospital*, 176 W.Va. 492, 345 S.E.2d 791 (1986). *See also, Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977). Mrs. Muzelak met the objective standard outlined in *Jarrett, supra*, to recover annoyance and convenience damages. We see no reason for the court arbitrarily to reduce the jury verdict. We reverse the

trial court and reinstate the jury verdict of $15,000 in compensatory damages.

### III

Mrs. Muzelak asserts that the trial court erred in awarding her attorneys' fees for only half of the actual time spent on her case. Mrs. Muzelak requested attorneys' fees from June 6, 1983 through October 16, 1985 of $12,986.25 based on 173.15 hours actual time expended at $75 per hour. The circuit court awarded attorneys' fees at the rate of $65.00 per hour for 85.68 hours and court costs in the amount of $565.20. The court allowed only half of the attorney fee time requested because there were many non-warranty claims advanced as part of the plaintiff's theory of the case that the court did not believe should be paid by the defendant. We agree.

Mrs. Muzelak pleaded a violation of the Magnuson–Moss Act for breach of implied warranty in her complaint. The jury found that King Chevrolet had breached this implied warranty of merchantibility which was the proximate cause of Mrs. Muzelak's damages. The Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(2) (1975) allows costs and expenses, including attorneys' fees on actual time expended when there is a breach of implied warranty under state law:

"If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (*including attorneys' fees based on actual time expended*) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, *unless*

---

**11.** The Court's instruction regarding annoyance and inconvenience states:

"The court instructs the jury that if you find that the plaintiff is entitled to damages for loss of use of her vehicle, you may consider the elements of annoyance and inconvenience in determining the appropriate measure of damages, but you may not make a separate and independent award of damages for annoyance and inconvenience; and in considering the elements of annoyance and inconven-

ience, you are to measure them by an objective standard of ordinary persons, acting reasonably under the given conditions.

**12.** Other items of specific damages that Betty Muzelak proved are as follows:

| | | |
|---|---|---|
| 1. | Undercoating that was ineffective. | $179.00 |
| 2. | Payments on replacement automobile. | $537.00 |
| 3. | Transmission fluids. | $ 4.82 |
| | | $720.82 |

*the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.* [Emphasis Added]

15 U.S.C. § 2310(d)(2) (1974).

 Furthermore, in Syl. Pt. 3 of *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986), this Court held: "There is authority in equity to award to the prevailing litigant his or her reasonable attorneys' fees as 'costs' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."

Clearly, in Mrs. Muzelak's case there was sufficient evidence of wanton, willful or malicious conduct to support the jury's finding of punitive damages. Similarly, there was sufficient evidence of bad faith or oppressive conduct to support an award of reasonable attorneys' fees. The critical issue is what are "reasonable" attorneys' fees in the present case?

In *Hayseeds, Inc. v. State Farm*, 177 W.Va. 323, 352 S.E.2d 73 (1986), this Court discussed attorneys' fees and punitive damages; we pointed out that punitive damages are often awarded to off-set litigation expenses. When, in *Hayseeds*, we all but abolished punitive damages in fire insurance cases (except when companies require detailed proof of loss from the insured in personal property claims), we off-set this disadvantage to plaintiffs by allowing them an automatic award of attorneys' fees if they substantially prevailed. *Hayseeds*, 177 W.Va. at 330, 352 S.E.2d at 81. The same logic applies to this case: many of the theories advanced by Mrs. Muzelak were to support her claim for punitive damages, and she recovered a punitive damages award on those theories. Because, as *Hayseeds* implies, punitive damages are designed in part to subsidize litigation costs, the circuit court was correct in not awarding attorneys' fees for work done to support the theories justifying punitive damages.

 Clearly, counsel for the plaintiff set forth a multitude of claims, the majority of which were unrelated to Mrs. Muzelak's warranty claims. The Magnuson–

Moss Act, 15 U.S.C. § 2310(d)(2) (1974) allows recovery of attorneys' fees for actual time expended on the warranty claims. This recovery was granted by the circuit court. Therefore, we find the circuit court awarded reasonable attorneys' fees when it allowed fees for actual time spent on prosecuting the breach of warranty issue.

However, we also find that Mrs. Muzelak should be awarded reasonable attorneys' fees for the appeal of this case and include the determination of that amount as a subject to be addressed along with others discussed above upon remand to that court.

Affirmed in part; Reversed in part; and Remanded.