IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0489

_____

FILED

**April 8, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS

DAN'S CAR WORLD, LLC, A WEST VIRGINIA LIMITED LIABILITY COMPANY
D/B/A/ DAN CAVA'S TOYOTA WORLD,
Defendant Below, Petitioner

v.

CARESSA DELANEY
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker
Case No. 18-C-75

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED

_____

Submitted: January 5, 2022
Filed: April 8, 2022

Gregory H. Schillace, Esq.
Schillace Law Office
Clarksburg, West Virginia
Petitioner's Counsel

John N. Ellem, Esq.
Ellem Law Office, PLLC
Parkersburg, West Virginia

Jane E. Peak, Esq.
Allan N. Karlin & Associates PLLC
Morgantown, West Virginia
Respondent's Counsel

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS, sitting by temporary assignment, not participating.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review.  We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a de novo review."  Syllabus Point 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

2.      "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*."  Syllabus Point 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

3.      "In formulating the appropriate sanction, a court shall be guided by equitable principles.  Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction.  The court must explain its reasons clearly on the record if it decides a sanction is appropriate.  To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case."  Syllabus Point 2, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

4. "The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion." Syllabus Point 1, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985).

5. "Where a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W.Va. R. Civ. P.* 37(b) is available to the court and the party represented by that counsel must bear the consequences of counsel's actions." Syllabus Point 4, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985).

6. "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 3, *Sally-Mike Prop. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986).

7. "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and

difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syllabus Point 4, *Aetna v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

WALKER, Justice:

After Respondent Caressa Delaney had trouble with the car she bought from Petitioner Dan's Car World (DCW), she sued DCW. During discovery, DCW's conduct included withholding requested documents, even after the circuit court ordered production of the documents and imposed monetary sanctions. When the requested documents finally appeared as an exhibit to DCW's motion for summary judgment, the circuit court denied the motion and sanctioned DCW a second time by striking its defenses. On appeal, DCW challenges not only the sanction, which resulted in a directed verdict at trial, but also the damages awarded by the jury and the circuit court's award of prejudgment interest and attorney fees.

We find that the circuit court acted within its discretion by issuing the sanction, approving the jury's verdict, and ordering DCW to pay attorney fees and costs. But we agree that the circuit court erred by applying prejudgment interest to the entire verdict, so we reverse that portion of the circuit court's order. On remand, we direct the circuit court to assess DCW with Ms. Delaney's attorney fees and costs in defending this appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Delaney purchased a used 2012 Chevy Equinox from DCW in February 2017. She experienced numerous issues with the vehicle soon after. So, on February 20,

2018, Ms. Delaney sued DCW alleging breach of express warranty, breach of implied warranty, misrepresentation, breach of the Magnuson-Moss Warranty Act[1], violation of the West Virginia Consumer Credit Protection Act (WVCCPA)[2], revocation of acceptance, breach of the duty of good faith, and unconscionability. About a month after filing suit, Ms. Delaney served DCW with interrogatories and a request for production of documents. Importantly, Ms. Delaney's request for production sought, among other things, the following:

> a complete copy of [DCW's] dealer file for [Ms. Delaney's] vehicle, including but not limited to purchase agreements, finance agreements, advertisements, window stickers, disclosures, work orders, trade-in documents, cancelled checks and credit information.

DCW never responded to the interrogatories or the request for production.

After Ms. Delaney unsuccessfully attempted to induce a response from DCW, she filed a motion to compel the discovery. DCW partially answered the interrogatories shortly before a hearing on Ms. Delaney's motion. Somewhat appeased, Ms. Delaney agreed to forgo the hearing in exchange for DCW's promise to fully answer

---

[1] The Act, among other things, provides federal minimum standards for warranties. *See* 15 U.S.C. § 2304 (1975).

[2] W. Va. Code §§ 46-6-101 through -110 (2015).

the interrogatories and respond to the outstanding request for production. The circuit court entered an order reflecting the parties' agreement on September 12, 2018.

Despite the circuit court's order, DCW never supplemented its answers to the interrogatories or responded to the request for production. Consequently, Ms. Delaney filed a second motion to compel. DCW neither responded to the motion to compel nor appeared for the hearing on it. When DCW's counsel failed to appear, the circuit court telephoned his office and allowed him to participate by phone. DCW's counsel admitted that he violated the circuit court's prior order by not supplementing DCW's answers to the interrogatories or responding to the request for production. So, by order dated February 12, 2019, the circuit court required that DCW's counsel pay Ms. Delaney's counsel $1,200 in attorney fees as a sanction.[3] The circuit court further warned that "[a]dditional discovery failures and/or similar conduct by defendant [DCW] or its counsel in the future may justify harsher sanctions by this [c]ourt, including those listed in Rule 37(b)."

After the sanction, DCW supplemented its answers to the interrogatories and responded to the request for production. Notably, DCW represented that it "previously produced" all documents related to the vehicle. Ms. Delaney found this and other responses inadequate and asked DCW to clarify its responses three times between March

---

[3] He still had not paid this sanction as of the January 5, 2022, oral argument in this case.

3

and May of 2019. She also sought DCW's cooperation to schedule the deposition of its managing member and controller. Again, DCW never responded to any of Ms. Delaney's communications. So, Ms. Delaney subpoenaed DCW's managing member and controller and "all service files, dealership files and any other records that maybe [sic] in [the controller's] possession for [Ms. Delaney's car]." DCW objected to the document subpoena and the deposition dates and venue. Ms. Delaney agreed to reschedule the subpoenaed depositions, but DCW never responded to her attempts to do so. So, Ms. Delaney subpoenaed the witnesses and documents again. When Ms. Delaney finally deposed the controller, DCW again objected to the document subpoena claiming "[w]e believe we've produced all copies of all of the documents with respect to the vehicle, which is the subject of this incident, and has previously been provided to [Ms. Delaney's counsel]." But during the controller's deposition, she testified that DCW possessed a dealer file for Ms. Delaney's car which contained subpoenaed documents and that DCW's counsel instructed her not to bring it.[4]

---

[4] During the deposition, DCW argued that the subpoena did not require the controller to produce the documents since the circuit court issued it to the controller and not DCW as an entity. But regardless of the procedure, we find deliberate misconduct by DCW because the circuit court's prior discovery order required it to produce the dealer file, and in DCW's response to the request for production, it misrepresented that it did.

On October 25, 2019, Ms. Delaney filed a motion to strike DCW's defenses as a sanction for its continued discovery misconduct. A week before that motion's scheduled hearing, DCW filed a motion for summary judgment and attached as an exhibit unproduced documents that the circuit court's discovery order required it to produce. At the hearing, Ms. Delaney raised the issue, and DCW initially argued that it previously produced the documents but then claimed that it had only recently discovered them. [5]

The circuit court denied DCW's motion for summary judgment, granted Ms. Delaney's motion to strike DCW's defenses, and scheduled the case for trial. A few days before trial, DCW filed a petition for writ of prohibition with this Court challenging the circuit court's order that struck its defenses. We summarily denied the petition, and the trial proceeded as scheduled. The circuit court directed verdicts for Ms. Delaney on her breach of warranty, Magnuson-Moss Act, revocation of acceptance, WVCCPA, and misrepresentation claims. The circuit court allowed both parties to present evidence for

---

[5] The documents included a "Customer write-up & visual inspection" form and "Dan Cava Used Car Check Sheet" for Ms. Delaney's car. DCW argued to the circuit court that no dealer file contained the documents. But the circuit court found that its earlier discovery order required DCW to produce the documents. We find it unlikely that the dealer files for Ms. Delaney's car did not contain these documents, because the controller testified in her deposition that the dealer files contained documentation of cars traded in. But we agree that, at a minimum, the circuit court's discovery order required DCW to produce the documents, because it required DCW to "provide appropriate answers to [the] requests" for "all documents and/or other tangible items known to you at this time, which supports or disputes those allegations set forth in the complaint . . . ."

the jury to determine damages. Ms. Delaney and an expert testified on her behalf, but DCW chose not to present any evidence.

The jury awarded Ms. Delaney $18,662.09 which, according to the verdict form, consisted of $12,662.09 for the breach of warranty claims[6], $2,000 for the WVCCPA claim, $2,000 for the misrepresentation claim, and $2,000 in punitive damages. The circuit court awarded prejudgment and post-judgment interest on all damages.

The circuit court also ordered DCW to pay Ms. Delaney $135,937.50 in attorney fees and $8,621.47 in other litigation expenses since she prevailed on her Magnuson-Moss Act and related claims. Ms. Delaney's counsel represented her on a contingent basis, but the circuit court calculated the fees based on an hourly rate of $375 per hour for 362.5 work hours. It deemed the $375 hourly rate reasonable based on affidavits from West Virginia attorneys, and DCW did not object to the proposed rate. The lawyers who represented Ms. Delaney throughout the litigation each submitted itemized time logs after eliminating redundant time and testified to the time logged.

---

[6] This amount represented a return of the vehicle's purchase price, and the jury also awarded it for Ms. Delaney's Magnuson-Moss Act and revocation of acceptance claims, but the circuit court correctly consolidated the awards to eliminate duplicative damages.

6

DCW appeals the circuit court orders that denied its motion for a new trial or judgment as a matter of law and awarded attorney fees to Ms. Delaney. Specifically, DCW asserts that the circuit court erred or abused its discretion by: (1) denying DCW's motion for summary judgment, (2) striking DCW's defenses, (3) awarding attorney fees and costs, (4) permitting the jury to award damages for the misrepresentation claim, (5) permitting the jury to award punitive damages, and (6) awarding prejudgment interest for general or punitive damages.

## II. STANDARD OF REVIEW

We apply a two-part standard of review to denials of motions for new trials:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.[7]

But we apply a less deferential standard of review to denial of motions for judgment as a matter of law: "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule

---

[7] Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*."[8]  Specifically,

"[a]fter considering the evidence in the light most favorable to the nonmovant party, we

will sustain the granting or denial of a pre-verdict or post-verdict motion for judgment as a

matter of law when only one reasonable conclusion as to the verdict can be reached."[9]

Finally, "[t]he decision to award or not to award attorney's fees rests in the

sound discretion of the circuit court, and the exercise of that discretion will not be disturbed

on appeal except in cases of abuse."[10]

## III.  ANALYSIS

We can easily dispose of DCW's assignments of error regarding summary

judgment, damages for the misrepresentation claim, and punitive damages.  And we note

that DCW confusingly appeals the order denying its motions for a new trial or judgment as

a matter of law but cites only the summary judgment standard of review.  We will apply

the correct standard of review to its assignments of error.  First, we refuse to review the

---

[8]  Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

[9]  *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 225 W. Va. 178, 183, 690 S.E.2d 587, 592 (2009) (citing Syl. Pt. 3, *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996).

[10]  *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003).

denial of a motion for summary judgment after a trial.[11]  Second, DCW argues that "[a]s

there was no evidence of any damage, the verdict of $2,000.00 for misrepresentation must

be set aside."  But Ms. Delaney correctly recognizes that DCW did not raise this issue in

its post-trial motions, and "this Court will not decide nonjurisdictional questions which

were not considered and decided by the court from which the appeal has been taken."[12]

And third, DCW argues that "it has long been the law in West Virginia that a cause of

action for breach of contract will not support a claim for breach of contract [sic]."

Assuming it meant a cause of action for breach of contract will not support a claim for

punitive damages, DCW ignores the fact that the circuit court directed a verdict on Ms.

Delaney's misrepresentation claim and the jury awarded the punitive damages on that

claim, not for breach of contract.[13]  We address the remaining assignments of error below.

### A.        *Discretion to Strike Defenses*

---

[11] *Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 561, 814 S.E.2d 205, 224 (2018) (holding that the petitioner's attempt to reargue the circuit court's denial of summary judgment after trial is "procedurally unsound."); *Martin v. Lovelace*, No. 19-0745, 2021 WL 2182344, at *3 (W. Va. May 28, 2021) (memoandum decision) ("[t]he denial of summary judgment retains its interlocutory character as simply a step along the route to trial and final judgment."); *see also Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion.").

[12] Syl. Pt. 1, in part, *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971).

[13] *Muzelak v. King Chevrolet, Inc.*, 179 W. Va. 340, 344, 368 S.E.2d 710, 714 (1988) (permitting punitive damages for misrepresentation claim).

The circuit court struck DCW's answer and defenses under Rule 37(b)(2) of the West Virginia Rules of Civil Procedure because of its "pattern of discovery misconduct, forcing of [Ms. Delaney] to expend time and money responding to [DCW's] misconduct, ignoring of prior court orders and lack of effect of monetary sanctions on DCW. . . ." DCW asks us to relieve it of this sanction, arguing that Rule 37(b)(2) required the circuit court to find it acted in bad faith or intentionally before issuing the sanction.

> Rule 37(b)(2) provides, in relevant part:
>
> (2) . . . If a party . . . fails to obey an order to provide or permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:
>
> . . . .
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses . . . .[14]

DCW cites *Cattrell Companies, Inc. v. Carlton, Inc.*[15] for the proposition that before striking its defenses, the circuit court had to find it acted in bad faith or intentionally. But in *Cattrell*, we acknowledged no such requirement. Instead, we held that the party moving for sanctions under Rule 37(b) must show that they acted in good faith in clarifying the

---

[14] W. Va. R. Civ. P. 37(b)(2)(B) (2010).

[15] 217 W. Va. 1, 614 S.E.2d 1 (2005).

10

discovery requested—not that the responding party acted in bad faith.[16]  DCW does not

argue that Ms. Delaney failed to specify the requested discovery and makes no other

argument regarding Rule 37(b).  As such, it fails to show the circuit court abused its

discretion by striking its defenses under Rule 37(b).[17]

> And the relevant factors supported the circuit court's sanction:

> > In formulating the appropriate sanction, a court shall be guided by equitable principles.  Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction.  The court must explain its reasons clearly on the record if it decides a sanction is appropriate.  To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.[18]

As we consider this matter on appeal, we note that "[t]he imposition of sanctions by a

circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order

---

[16]  *Id.* at 7, 614 S.E.2d at 7 ("a party who has successfully obtained an order compelling discovery has a duty to act in good faith with the opposing party when the opposing party seeks clarification of what is sought under the order compelling discovery.").

[17]  DCW also argues the circuit court violated its constitutional rights by striking its defenses against punitive damages.  But the circuit court permitted DCW to present evidence during the damages portion of trial and did not strike its defenses against punitive damages.

[18]  Syl. Pt. 2., *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

11

to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion."[19]

In its sanctioning order, the circuit court identified DCW's misconduct, namely DCW's failure to disclose requested documents despite being ordered to do so. The circuit court justified its sanction by explaining DCW's failure to obey its orders and the ineffectiveness of previous sanctions. The circuit court also highlighted the impact the misconduct had on the case by explaining that DCW sought summary judgment relying, in part, on documents the discovery orders required it to disclose much earlier and that the misconduct required Ms. Delaney to expend significant resources litigating motions to compel, struggling to schedule depositions, filing multiple subpoenas for discovery that DCW should have disclosed voluntarily, and responding to a petition for writ of prohibition. Perhaps most significantly, DCW's conduct continued throughout the litigation even after a sanction, warnings, and, as the circuit court found, despite DCW's "numerous opportunities to correct its discovery misconduct." Further, we find no mitigating circumstances, especially considering DCW's counsel never paid the initial $1,200 sanction.

---

[19] Syl. Pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985).

12

We recognize that DCW may have possessed limited control over or knowledge of its counsel's transgressions, but "[w]here a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W.Va. R. Civ. P.* 37(b) is available to the court and the party represented by that counsel must bear the consequences of counsel's actions."[20] For those reasons, we find that the circuit court acted within its discretion by striking DCW's defenses.

## B.    *Attorney Fees*

DCW first argues that the Magnuson-Moss Act did not permit Ms. Delaney to recover attorney fees. The Act provides, in relevant part, that

> (1) . . . a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under . . . a . . . warranty . . . may bring suit . . . .
>
> (2) if a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action . . . .[21]

---

[20]  Syl. Pt. 4, *id*.

[21]  15 U.S.C. § 2310 (d)(1)-(2) (1975).

13

DCW's assertion rests on its argument that Ms. Delaney did not prevail within the meaning of the statute since the jury awarded her less than she requested in settlement negotiations. But DCW cites no authority to support the assertion. A New York court researched the legislative history of the statute and found that "finally prevail" means "successful in the litigation."[22] And a Florida appeals court found that "[a] consumer will be found to have finally prevailed under section 2310(d)(2) when the trial court enters a final judgment on the merits of a claim or retains jurisdiction to enforce a settlement agreement . . . ."[23] These interpretations are consistent with the plain meaning of "finally prevail." Indeed, when addressing another federal fee shifting provision, the United States Supreme Court held that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."[24] A federal court applied the holding to interpret "finally prevail[]" and held that "in order to recover attorney's fees under Magnusen–Moss, a party must have either obtained a judgment on the merits or, alternatively, reached a settlement agreement enforced through a consent decree."[25] We agree with these interpretations; a party finally prevails when a court enters

---

[22] *DeVries v. Pitts Pontiac GMC-Trucks, Inc.*, 545 N.Y.S.2d 1009, 1012 (1989).

[23] *Mady v. DaimlerChrysler Corp*, 976 So.2d 1212, 1214 (Fla. Dist. Ct. App. 2008).

[24] *Texas State Tcher. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

[25] *Pitchford v. Oakwood Mobile Homes*, 212 F.Supp.2d 613, 617 (W.D. Va. 2002).

14

a final judgment on the merits in their favor. Contrary to DCW's assertion, the amount a plaintiff recovers has no bearing on whether they finally prevail. In this instance, Ms. Delaney received relief on the merits of her claims, because the circuit court directed verdict in her favor at trial and the jury awarded damages for each claim. So, Ms. Delaney finally prevailed under the Act, and it permitted her to recover her costs and expenses for or in connection with her Magnuson-Moss Act Claim, breach of warranty claims, and revocation of acceptance claims.[26]

DCW next argues that "[t]he amount of hours [expended by Ms. Delaney's attorneys] is not broken down by claim and is unreasonable on its face." To support its assertion, DCW cites only *Tri-State Petroleum Corp*, a case that did not discuss awarding attorney fees on a claim-by-claim basis.[27] Instead, in that case, we reversed the circuit court's order "for lack of findings sufficient to permit meaningful appellate review . . . ."[28] In this case, DCW does not argue that the circuit court made insufficient findings to support

---

[26] *See City Nat'l Bank of Charleston v. Wells*, 181 W. Va. 763, 777, 384 S.E.2d 374, 388 (1989) ("a consumer who prevails on a claim for revocation of acceptance . . . in an action for breach of the seller's warranties . . . may recover reasonable attorney's fees under the Magnuson–Moss Act . . . ."); *see also Muzelak* , 179 W. Va. at 346, 368 S.E.2d at 716 (permitting recovery of attorney fees under the Magnuson-Moss Act for state law breach of warranty claim).

[27] 240 W. Va. 542, 814 S.E.2d 205.

[28] *Id.* at 565, 814 S.E.2d at 228.

15

its award of attorney fees. And, even so, the circuit court acted within its discretion by not making specific findings for the time expended per claim; it achieved the same result by awarding fees for the total time spent on the case because it possessed the authority to award fees for each claim and, therefore, all time related to the case. Along with the award of fees authorized by the Magnuson-Moss Act, the circuit court validly exercised its equity powers by awarding attorney fees for the misrepresentation claim, because "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."[29] And West Virginia Code § 46A-5-104 (1994) authorized the attorney fee award for the time associated with the WVCCPA claim, because the circuit court deemed DCW liable for fraudulent conduct, and "[i]n any claim brought under the [WVCCPA] applying to . . .fraudulent . . . conduct . . . , the court may award . . . costs of litigation, including reasonable attorney fees . . . ."

DCW also generally challenges the reasonableness of the number of hours Ms. Delaney's counsel claimed.[30] We have established the following test for evaluating the reasonableness of an attorney fee award:

---

[29] Syl. Pt. 3, *Sally-Mike Prop. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986); *See also Muzelak*, 179 W. Va. at 347, 368 S.E.2d at 717 (finding sufficient evidence for circuit court to award attorney fees under *Yokum* since jury awarded punitive damages).

[30] DCW does not challenge the hourly rate.

16

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[31]

And we have noted that

[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.[32]

In this case, the circuit court applied the relevant factors and found that "[DCW's] actions caused [Ms. Delaney's counsel] to expend additional hours on motion practice, on repeated attempts to communicate with [DCW's] counsel, and on responding to [DCW's] petition for a writ of prohibition . . . [,]" "the time and labor required of [Ms. Delaney's] counsel as well as the skill required to properly provide the legal services

---

[31] Syl. Pt. 4, *Aetna v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

[32] *Rice v. Mike Ferrell Ford*, 184 W. Va. 757, 760, 403 S.E.2d 774, 777 (1991) (Per Curium) (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

17

necessary in this case, particularly in light of [DCW's] failures to engage in discovery, is reasonably reflected in [Ms. Delaney's] counsel's detailed statements of hours[,]" "consumer cases are undesirable to most private practitioners . . . [,]" and "the agreement for fees between [Ms. Delaney] and her attorneys was a contingent fee recovery . . . ."

In DCW's analysis of the factors, it argues that "there is no novelty or difficulty of the questions presented in this action . . . [,]" "[Ms. Delaney] is an employee of one of the . . . law firms which represented her[,]" "the attorney fees sought by appellee are not reasonable for a one (1) day trial for which the appellee chose to have two (2) lawyers participate[,]"and "the 338.55 hours claimed by counsel for [Ms. Delaney] is excessive when compared to the approximately 124.55 hours expended by counsel for [DCW]."

DCW's assertion that the case presented little difficulty ignores the fact that its actions required Ms. Delaney to file three motions to compel, build her case without requested discovery, respond to a motion for summary judgment that included undisclosed documents, and respond to a petition for writ of prohibition about the sanctions, among other things. And although we consider a client's relationship with her counsel as a factor in the analysis, DCW baldly states that we should consider Ms. Delaney's employment relationship with her counsel without stating how it caused her counsel to work fewer hours. Likewise, DCW cites no authority supporting its argument that Ms. Delaney acted

unreasonably by having two lawyers. As to its argument about the hours being unreasonable for a one-day trial, DCW disregards the nearly two years between Ms. Delaney filing suit and the trial and again ignores the impediments it created. Finally, DCW's ironic and baseless comparison of the hours its counsel billed to those Ms. Delaney's billed proves nothing considering the circuit court sanctioned DCW for its counsel's neglect of duties.

So, DCW fails to show the circuit court abused its discretion by accepting Ms. Delaney's counsel's account of hours or by awarding the amount, and we see no reason to disturb the findings.

## C.    *Prejudgment Interest*

DCW argues that "permitting the recovery of prejudgment interest on general damages is in violation of West Virginia Code §56-6-31(b)." Indeed, the statute permits prejudgment interest only on special damages:

> (b) Prejudgment—In any judgment or decree that contains special damages . . . the court may award prejudgment interest on all or some of the amount of the special . . . damages . . . . Special damages include lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court . . . . [33]

---

[33]  West Virginia Code § 56-6-31(b) (2018).

19

In other words, a court may only award prejudgment interest on damages it finds "certain or capable of being rendered certain by reasonable calculation."[34]

DCW did not state which damages it considered general damages, but we assume it objects to the circuit court's award of prejudgment interest on the punitive damages and the damages for the misrepresentation and WVCCPA claims.[35] The circuit court found that

> [i]n the case of *Eriksen Const. Co. vs. Morey*, 923 F.Supp. 879 (S.D. W. Va. 1996), the court noted that insofar [as] the jury found the defendant had committed a breach of express and implied warranties and fraud, § 56-6-31 applied and that the court must assess prejudgment interest. Thus, the *Eriksen Const. Co.* case is clearly on point and this [c]ourt's award of prejudgment interest is entirely proper.

Ms. Delaney defends the circuit court's finding by echoing its reliance on *Eriksen* and arguing "[g]eneral damages in the form of nuisance, aggravation and inconvenience were not awarded."

---

[34] *Tri-State Petroleum*, 240 W. Va. at 567, 814 S.E.2d at 230 (quoting *Grove v. Myers*, 181 W. Va. 342, 347, 382 S.E.2d 536, 541 (1989)).

[35] The other $12,662.09 in damages represented a return of the car's purchase price which W. Va. Code § 56-6-31(b) captures within the definition of special damages since they represent "damages to personal property and similar out-of-pocket expenditures" and are otherwise capable of being rendered certain by reasonable calculation.

In *Eriksen*, "[t]he jury awarded sixty thousand four hundred eighty seven dollars and twenty cents ($60,487.20) in compensatory damages for Plaintiff's estimated crane damages and out-of-pocket expenditures necessary to conform the crane to the parties' agreement."[36] So, the federal court deemed the award special damages under W. Va. Code § 56-6-31.[37]

The federal court's decision does not bind us, and it may not support the proposition the circuit court and Ms. Delaney suggest; the jury in *Eriksen* apparently calculated the damages based on actual damage to the crane and to conform the crane to the parties' expectations—sums the court could render certain by reasonable calculation. In this case, other than the return of the car's purchase price, the nature of Ms. Delaney's claims left the damages calculation entirely to the jury's discretion. The jury had to determine amounts adequate to punish DCW for its misrepresentation and to compensate Ms. Delaney for harm, unrelated to Ms. Delaney's out-of-pocket expenses, caused by DCW's unfair or deceptive acts and its misrepresentations. The verdict form did not indicate that the jury relied on any baseline or formula that would allow the circuit court to

---

[36] *Eriksen Const. Co. v. Morey*, 923 F.Supp. 878, 879-80 (S.D. W. Va. 1996).

[37] *Id.* at 880.

21

render them certain, and the damages did not constitute lost wages and income, medical expenses, damages to tangible personal property or similar out-of-pocket expenditures.

We note that DCW did not submit a special interrogatory for the jury to distinguish general and special damages, and when a defendant fails to do so "our willingness to sort out such errors is entirely a matter of grace . . . ."[38] But given the clear error, we reverse the circuit court's award of prejudgment interest on all damages except the $12,662.09 return of the car's purchase price and remand for the circuit court to adjust the prejudgment interest award.

**D.       *Costs and Attorney Fees for Appeal***

Ms. Delaney asks us to tax DCW with her attorney fees and costs of this appeal. Rule 24(c) of the West Virginia Rules of Appellate Procedure provides:

> Costs of assembling and filing the appendix are taxable as costs in the discretion of the Court and may be divided among the parties to the appeal. Other taxable costs include costs for the preparation and handling of the designated record. Attorney's fees and costs are not taxable unless specifically provided by law.[39]

---

[38]  *Miller v. Monongahela Power Co.*, 184 W. Va. 663, 673, 403 S.E.2d 406, 416 (1991), *overruled on other grounds by Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999).

[39]  W. Va. R. App. P. 24(c) (2010).

As discussed above, statutes and case law authorize awarding the attorney fees and costs for each of Ms. Delaney's claims, and we choose to award them for this appeal. And given DCW's pattern of misconduct throughout this case, we choose to tax DCW with the other taxable costs under Rule 24(c). On remand, we direct the circuit court to determine Ms. Delaney's costs and fees for this appeal and order DCW to pay them.

## IV. CONCLUSION

The circuit court acted within its discretion by striking DCW's defenses, directing verdict for Ms. Delaney's claims, approving the jury's damages award, and ordering attorney fees for all time Ms. Delaney's counsel spent working the case. But the circuit court erred by assessing prejudgment interest on the entire verdict amount. So, we remand for the circuit court to impose prejudgment interest only on the $12,662.09 in special damages and to determine the costs and fees of this appeal.

Affirmed, in part; reversed, in part; and remanded.